Opinion issued June 19, 2025



In The

# Court of Appeals

For The

# First District of Texas

————————————

NO. 01-23-00871-CR

NO. 01-23-00872-CR

————————————

**JOHNNY MANUEL DELGADILLO, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 262nd District Court**
**Harris County, Texas**
**Trial Court Case Nos. 1814623 and 1841812**

---

## MEMORANDUM OPINION

The trial court found Appellant Johnny Delgadillo guilty on two counts of aggravated assault of a family member and sentenced him to eight years' confinement. On appeal, Delgadillo contends the trial court violated his Sixth

Amendment right to confrontation when it allowed a witness to testify about an out-of-court statement made by a victim who did not testify at trial. We affirm because the out-of-court statement was nontestimonial and thus did not implicate the Confrontation Clause.

## I.    Background

This case involves Delgadillo, his mother Natividad, his brother Jose, and his niece Graciela. One evening, Delgadillo was at home with Natividad and Jose when they began arguing about who would have Natividad's power of attorney. The argument became heated, and Delgadillo pointed a knife at Natividad and Jose and said, "I could kill you."

As this situation was unfolding, Jose called Graciela and told her Delgadillo was pointing a knife at him and Natividad. Graciela could tell Jose was "panicked." She said Jose was crying, and Delgadillo and Natividad were "yelling" in the background. Jose told Graciela he "needed [her] to be there" and "to call the police."

Graciela, who was familiar with Jose's normal voice, believed he was in "distress" and "incoherent," because he was "babbling" and saying Delgadillo was "threatening him." Graciela described Jose as being "emotional" during the call, which she characterized as Jose relating an "ongoing emergency."

Delgadillo was charged with two counts of aggravated assault on a family member. The case was tried to the bench. Natividad, Graciela, and Delgadillo

2

testified at trial. Jose's health conditions prevented him from testifying. Over Delgadillo's repeated objections, the trial court allowed Graciela to testify about the statements Jose made when he called her on the night of the assault.

The trial court found Delgadillo guilty on both counts and sentenced him to eight years' confinement.

## II.    Analysis

In a single issue, Delgadillo contends the trial court erred by allowing Graciela to testify about Jose's statements in violation of the Confrontation Clause. We review the trial court's admission of Graciela's testimony de novo. *Wall v. State*, 184 S.W.3d 730, 742 (Tex. Crim. App. 2006).

## A.    The Confrontation Clause

The Sixth Amendment's Confrontation Clause, which applies to the States through the Fourteenth Amendment, guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him[.]" U.S. CONST. amend. VI; *Langham v. State*, 305 S.W.3d 568, 575 (Tex. Crim. App. 2010). It ensures defendants have "the opportunity of cross-examination because that is 'the principal means by which the believability of a witness and the truth of his testimony are tested.'" *Johnson v. State*, 490 S.W.3d 895, 909 (Tex. Crim. App. 2016) (quoting *Davis v. Alaska*, 415 U.S. 308, 316 (1974)).

The Confrontation Clause bars out-of-court testimonial statements unless the witness is unavailable to testify at trial and the defendant has had a chance to cross-examine him. *Martinez v. State*, 327 S.W.3d 727, 738 (Tex. Crim. App. 2010) (citing *Crawford v. Washington*, 541 U.S. 36, 68 (2004)). But it does not require the exclusion of "nontestimonial" statements. *Zapata v. State*, 232 S.W.3d 254, 258 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd). The initial question before us, then, is whether Jose's statements to Graciela were "testimonial," a question of law. *Wall*, 184 S.W.3d at 742.

There is no comprehensive test for testimonial statements; each statement must be evaluated based on its particular circumstances. *Langham*, 305 S.W.3d at 575. But the United States Supreme Court "has identified three kinds of [out-of-court] statements that could be regarded as testimonial": (1) "'ex parte in-court testimony or its functional equivalent,'" *i.e.*, "'pretrial statements that declarants would expect to be used prosecutorially;'" (2) "'extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions'"; and (3) "'statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.'" *Wall*, 184 S.W.3d at 735 (quoting *Crawford*, 541 U.S. at 51–52).

4

Jose's statements to Graciela do not fall within the first two categories, so we consider whether his statements satisfy the third category. *Id.* We do so by applying the "primary purpose" test: a statement is testimonial if the circumstances indicate its "primary purpose" was to "establish or prove past events potentially relevant to later prosecution"—that is, to "create an out-of-court substitute for trial testimony." *Ohio v. Clark*, 576 U.S. 237, 244–45 (2015) (quotation omitted); *see also Langham*, 305 S.W.3d at 576. The relevant inquiry for the primary-purpose test is not the declarant's subjective or actual purpose for making the statement, "but rather the purpose that reasonable participants would have had, as ascertained from the individuals' statements and actions and the circumstances in which the encounter occurred." *Michigan v. Bryant*, 562 U.S. 344, 360 (2011). Therefore, the primary-purpose test requires that we consider "all of the relevant circumstances." *Id.* at 369.

The question of a statement's primary purpose, and thus its character as testimonial or nontestimonial, often arises in the context of statements made to law enforcement officers investigating a crime. In that scenario, courts generally distinguish between statements made for the purpose of seeking assistance during an ongoing emergency, and statements made after an emergency has passed, during a more structured police interrogation. The former are generally held to be nontestimonial; the latter are often testimonial. *See Gutierrez v. State*, 516 S.W.3d 593, 597 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd).

While confrontation concerns typically arise in situations involving statements to law enforcement officers or other government officials, the Confrontation Clause can also apply to statements made to private persons. *Clark*, 576 U.S. at 246 ("Because at least some statements to individuals who are not law enforcement officers could conceivably raise confrontation concerns, we decline to adopt a categorial rule excluding them from the Sixth Amendment's reach."). But statements to private persons are less likely to be considered testimonial. *Id*.; *Davis v. State*, 169 S.W.3d 660, 667 (Tex. App.—Austin 2005, *aff'd*, 203 S.W.3d 845 (Tex. Crim. App. 2006). Statements to private persons, particularly during an ongoing emergency, are more often considered nontestimonial because they generally are made to "seek help" rather than "create a substitute for trial testimony." *Avant v. State*, 499 S.W.3d 123, 129 (Tex. App.—San Antonio 2016, no pet.) (statements of ninety-year-old woman during call to her daughter as assault by her son was in process were nontestimonial because they were made "out of fear for her own safety" and not to "provid[e] testimony against [her son]").

## B.  Jose's statements to Graciela were not testimonial

With these principles in mind, we conclude Jose's statements to Graciela were not testimonial.

Jose made the statements to a private person during an "ongoing emergency." He called Graciela "crying," "babbling," and distressed because Delgadillo was

threatening him and Natividad with a knife, and Graciela could hear Delgadillo and Natividad arguing in the background. These circumstances establish the statement was made in the context of an ongoing emergency. *See Vinson v. State*, 252 S.W.3d 336, 339 (Tex. Crim. App. 2008) (citing *Davis*, 547 U.S. at 832); *see also Dixon v. State*, 244 S.W.3d 472, 484 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd) (statements made by victim of crime during 911 call were nontestimonial in part because victim was "highly distressed").

Graciela also testified that Jose was in a "panicked" and "emotional" state and "incoherent at first and [she] needed him to slow down." Jose's state of mind as he made the proffered statements thus indicates they were nontestimonial in nature. *Davis*, 547 U.S. at 827 (911 caller's "frantic answers" to operator's questions indicative of nontestimonial statements); *Santacruz v. State*, 237 S.W.3d 822, 830 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd).

Finally, Jose made the statements from his home, during a call he initiated seeking help from Graciela regarding an ongoing emergency with no police officers present. His statements were neither "official and formal nor solemn declaration[s] made for the purpose of establishing some fact." *Dixon*, 244 S.W.3d at 485 (citation and internal quotation marks omitted)). Nothing about the circumstances indicates Jose made the statements to memorialize past facts so they could be used to prosecute Delgadillo. *See Dixon*, 244 S.W.3d at 485.

Considering "all of the relevant circumstances," we conclude the "primary purpose" of Jose's statements to Graciela was to seek help rather than to "create an out-of-court substitute for trial testimony." *Bryant*, 562 U.S. at 360; *Clark*, 576 U.S. at 245. Indeed, Jose expressly told Graciela he "needed [her] to be there" and "needed [her] to call the police." Jose's statements were nontestimonial and did not implicate the Sixth Amendment's Confrontation Clause. We overrule Delgadillo's sole issue.

## Conclusion

We affirm the trial court's judgment.

Andrew Johnson
Justice

Panel consists of Chief Justice Adams and Justices Caughey and Johnson.

Do not publish. TEX. R. APP. P. 47.2(b).